Mr. Brown, is this case 11-2-16-0448? The people of the state of Illinois defend Mr. Heidegge being guilty to Berrios, defendant of a cut-off. Are you in law on behalf of the state of Colorado, Mr. Matthew J. Heidegge? Are you in law on behalf of the defendant, Kathleen, Mr. David A. Brown? Thank you, Mr. Heidegge. I'm here on behalf of the ecology leadership. Thank you. May it please the Court, Counsel. There is perhaps nothing more central to the attorney-client relationship than the ability of the attorney to prepare. It colors not only what happens at trial, but the advice the attorney gives the client with respect to testifying, with respect to whether or not to enter a plea of guilty, every aspect of the trial. In this case, and I'm not going to rehash the facts because I know we've gone over the briefs. Thank you. That ability was hampered by the way that this material came out. I would point out, just briefly, that of the factors that are important for a Brady claim, that the statement be favorable to be accused, that the statement be suppressed by the state, and that the defendant be prejudiced because the statement is material, none of those were really contested by the state. Under the Constitution, does Brady require pre-trial disclosure? You know, I can't cite to a case offhand, but it would seem to me that if it's a matter of due process, it should. The entire ability of an attorney to represent his client is undermined if it's not. I can't cite to a case, but it seems to me as a due process issue, it should. But if it comes up mid-trial or late trial, it seems to me that most of the reason it would be required under due process has been eviscerated by that point. I was going to ask you a related question. Does Brady require an automatic reversal in every case if the evidence is not disclosed until the opening statement? Because there appears to be a line of cases, and I'm calling your attention to U.S. v. Rogers, 960 F. 2nd, 1501, states, under the rule in our circuit, Brady does not require pre-trial disclosure. A due process is satisfied if the information is furnished before it is too late for the defendant to use it. So that would not be the case here. Wasn't the defendant able to use it? Well, in part, Your Honor, the defendant was able to in some way mitigate some of the effects. But with respect to a hardline rule, does Brady require a reversal in every case? It doesn't. However, there's an important fact in this that probably I think changes everything as much as it might be overlooked, and that's that this man had one leg. And the actual statement we're looking at is a statement that the contact from Mr. Berrios to Ms. Martinez from behind, whether or not it was accidental, if he is ambulatory, if he's able-bodied, that seems much less important. But in a case where you have a man who has one leg and he's effectively hopping after somebody, the intensity of that statement is a lot bigger. Now, were they able to use the statement? Were they able to get into the statement? Sure. Was the defense attorney able to follow up on that? Was she able to use that to go talk to witnesses, perhaps talk to one of the children? Was she able to go get pictures of the house, how the house normally is? Was she able to get the child's toys? She wasn't able to do any of that. Let me ask you this. As you know, on trial, this evidence was disclosed after the opening statement, correct? After the evidence came up in the prosecutor's opening statement. Right. Yes, sir. We know this is childhood. I mean, I believe still the IPI hasn't changed that much in the last few years. Isn't the jury instructed that opening statements and closing arguments are not evidence? I mean, all the evidence is what comes into the testimony of the witnesses and the exhibits. Sure. So if they already know it, so where was the prejudice in getting it after the opening statement? The prejudice was the ability of the defense attorney to look into those statements. The defense attorney has a theory of a case crafted that there was no physical altercation. Well, she finds out for the first time after trial started that the prosecutor has been told that the victim is not going to say this is an accident when the victim's statements to the police before were different. So the prejudice is in the ability of the attorney to investigate that, to possibly generate other evidence and to possibly craft an entire theory of the case prior to trial. The attorney was allowed to interview the victim before trial proceeded, correct? Agreed. And then after interviewing the victim, I mean, if anything had come up in that interview that needed further investigation, the attorney theoretically would have asked for a continuance. Here the attorney did not ask for a continuance, correct? Well, if I recall correctly, the attorney asked for a mistrial prior to being told this is the remedy he could get. Correct. If the court is saying that she should have asked for another mistrial afterwards, I don't recall her doing that. However, she had already been advised by the court that that was not an acceptable remedy. You're saying her prejudice was that she couldn't look into things. If she has the opportunity to talk to the victim, find out what's happened, you know, what the victim's going to testify to, and then finds out, I've got to talk to the kids, I need to get some pictures, I need all the things that you're mentioning, then it would be incumbent upon the attorney to say, Judge, I need a continuance or renew the mistrial, but at least ask for a continuance to further investigate this information that she didn't have before. Perhaps that's a good point, Judge, but I think that, Justice, excuse me, she had been advised by the court already that that wasn't something that was going to happen. Had that not happened, I think it's much more viable to ask an attorney for a second time to ask for a mistrial based on a conversation when the judge has said, I'm not going to let you do that because you had the right, the access to this person ahead of time. Well, the further investigation, I'm thinking, was necessary. The evidence that came in, they found out that she, or she was going to testify to, Anastasia testified essentially to a way that exculpated him to do that, but she doesn't remember much. She woke up and can't remember what it was. It was an accident, the contact. Doesn't that help him? It does help him. Otherwise, it wouldn't be a brain issue. Right. So what else would she have gained or, with the case of gain, by continuing it two weeks? She already had her statement at trial that was favorable to him. What could have been gained is any sort of investigation that the defense attorney could have done. To do what? Well, it's hard to speculate because it's not a record. It's not a record. But we don't know exactly what was in the police reports. Like I said, we don't know the condition of the house to where I believe three children are there. Admittedly, at least one of them was very young and of no use. What do you mean we don't know what was in the police reports? Well, we don't have a copy of the police reports. At some point, there are a couple of statements that make you think that there were some things in the reports that didn't necessarily come out. But we don't know necessarily what was in the police reports. Trial testimony is often different than what's in the police report. We learned about some of that in this case because she talks about the variance. But I think to speculate what could have been done in a case where a lot of that is not a record, I mean, I couldn't speculate other than to tell you I think that there are, from a defense attorney's standpoint, condition of the home, condition of the toys, all sorts of things. Well, why wouldn't this have been done anyway by a competent defense attorney? Why would they have to wait for something to be revealed, an open statement, to look into the condition of the house and the children? I don't see why they're dependent upon this disclosure. Because the theory of the case at that point, based on talking to the client and looking at what was turned over in discovery, was that there was no physical altercation. That's why. I mean, if the court's asking, why did she not? No, no, the evidence started, the case started out where there was a statement by Anastasia that there was a physical confrontation. Correct. So, wouldn't a defensive county attorney would have looked into the condition of the house, talked to the other people there anyway? All of a sudden, this favorable evidence drops down from the sky that can be taken advantage of. It totally helps the defendant. So now that this helpful evidence all of a sudden is given, comes forth from nowhere, we're going to say, oh, I think now that I have this favorable evidence, I'll investigate further? Really? Well, it's, I mean, I think that's the way it works. Unfortunately, in criminal defense, you talk to your client, you get a version of things, you read the reports. Oftentimes, and you can tell in this case, there is currently some animosity between the parties. You don't have access to a victim. And the only access you have to a victim either comes with a state's attorney saying, hey, she's here in a hallway, do you want to talk to her? Or, hey, I talked to her and this is what she said. It's often very – An investigation, arguably, should have been done ahead of time. It shouldn't wait upon the trigger of a favorable evidence. And I don't know if there was an investigation done, but I'm just, as I read this, when I saw that things that she could have done that we don't really know because there are no police reports, involve the condition of the home and things of that nature. If she spoke to Mr. Berrios and speaking to Mr. Berrios, she thought at that point her best argument was that there wasn't physical contact. I don't know why she would look into other things until she's told that the victim is going to say this is an accident. But you didn't allege ineffective assistance of counsel, correct? I did not. Because we have the statement, an opening statement, where they made this statement about the victim. And then the defense gets up and makes their opening statement. And then later, as for mistrial, because one of the things you're arguing, I don't know if they argued it, but one of the things you're arguing is that we got up and said something that now we've got to change our theory of the case when they should have made this court aware of this, the trial court aware of this, after the state's opening. And there's no doubt about that it should have been brought up immediately, Justice. I would say, though, that as far as jury trials go, possibly the worst time to interrupt that is between opening and closing. Opening statements aren't evidence. But it's changing your theory of the case. I mean, that could be a big deal. A huge deal. If you're getting wind, I mean, the prosecutor didn't say this. He alluded to it. But if you're getting wind that the victim is going to flip, you may want to know that before you get up and say nothing happened. And I can see that point. I don't disagree with that at all. I think the timing was problematic. Before I asked you about asking for a continuance after having a chance to further explore this matter, the first district in the People v. Simon 2011 case said that not asking for a continuance is evidence of the lack of importance that the information had on the outcome of the case. Do you agree with that? I do agree with that. But I would again point out that it's not as though this was not discussed in open court prior to the judge saying, here's your remedy. I don't see how asking for another continuance or mistrial would have changed the court's ruling, which was, in effect, you had access to this person, here's your remedy. Technically, should she have asked for a continuance or mistrial? Probably she should have. However, it was a matter that was hashed out and it was a matter that was ruled on and it was a matter that the court's thoughts were known. If this evidence had been disclosed a week before trial, how would that disclosure have affected the outcome of the case? The evidence is disclosed that Anastasia is now going to say that there was no intentional contact between the two of them. They know that a week ahead of time. So how is it going to change the result when, in the trial, as a matter of fact, Anastasia came out and she testified there was no contact? The evidence was presented at trial, was it not? That evidence was presented at trial. Okay. So they got it a few days earlier. What difference would it have made? Ms. Martinez's credibility was obviously not something the jury bought into at that time. And there are things around her statement that perhaps could have been done, perhaps not, but at least could have been looked into. And as I talk in there about Rule 412, and I know I understand it's a felony rule, but I talk about committing the notes, the issue, as I see it, is one of preparation. And it's one of allowing an attorney to do an attorney's job. I haven't been in Mr. Berrios' home. I haven't spoken to Mr. Berrios. I don't know that I can fully speculate on how things might have changed. I can just tell you again that there are measures the defense attorney could have taken, even if it was disclosed a day earlier. I know, but you know I am asking this because it bears on the issue. You're giving us generally the things that might have been done. But what the bottom line comes down to is we need to assess how the outcome would have been different. And you're telling us there would have been a more thorough investigation doesn't really tell us how the outcome was likely to be different. Well, I can tell you from just an in-court standpoint that you would have had likely a different opening. I mean, it's – I understand that it was – the statements came out right before her opening. However, that's the worst possible time for them to be disclosed because at that point she's got a prepared opening. She's 90, 85, 90 percent sure whether or not her client's going to testify and who's going to testify. Given enough time to prepare, you would have likely seen a different opening. You probably wouldn't have seen Mr. Berrios testify. And I suspect you would have seen evidence presented or at least testified, as you did, to those factual specifics. And you likely would have seen evidence presented that helped a jury decide that when Ms. Martinez is saying in court is more credible than what Ms. Martinez wrote on there. Well, I would agree with you on that point. I think we probably should all agree. The better practice, the safer practice would have been to disclose this well in advance of the trial. But there are some cases, as you know, that can come up right on the day of the trial. And as you've acknowledged, the case law doesn't say it's an automatic reversal under these circumstances. No, and if I recall correctly, Mr. Lloyd disclosed – Mr. Lloyd didn't have access to that statement or heard that statement the first time, probably the morning before he was ready to pick or on the pretrial the Thursday before. Well, I thought he got it the day before when he actually talked to her, probably in trial court preparation. And what is that one day going to do that couldn't have been done that day? I mean, he would have come in and maybe the defense attorney would have asked for a continuance, could have asked for a continuance on the day of trial. Maybe he could have started the investigation, but the one you said could have happened but didn't. Maybe he could have changed trial strategy. Probably not. And, you know, so we're talking about a day. We're not talking about anything intentional, apparently. We're not talking about something they do, you know, two days after the incident. We're talking about what most of us have come to know is a regular, and that's a sad word to use, but a regular domestic battery case where the victim tends to change his or her mind as trial approaches. So what's the difference? What's the difference in a day? I think the difference is huge. My preparation as far as openings, my opening I usually craft, unfortunately, for the most part, in my head on the way to court where I get up super early in the morning. Opening, not evidence, but it's huge in the case. It sets the tone for the case. It's your hello to the jury. It's your first chance to paint a picture to these people. So I think just from an opening standpoint alone, you know, cases are made in jury selection, opening and closing, assuming the facts aren't terrible. Just the ability to make a better opening, a stronger opening, and an opening that bolsters the evidence that you know is about to show up. You know, the state's opening was that, look, I'm going to put her on the stand and you can't believe a word she's saying. She could have crafted an opening that was you're going to hear from her, and this is why she's telling the truth. Even a day to prepare that is a huge deal. In response to Justice Hudson's question a few minutes ago, you talked about all these different things that likely would have happened or may have happened if it was disclosed earlier, whether it was a day before or a week before. Again, you're speculating. And isn't it incumbent upon defense counsel to articulate these things for us to then review, whether it's error? And I believe that the defense attorney in the case did bring up in the post-trial motion and possibly even in the argument, if I recall, they argued twice. There's kind of a break and then they argued again. She does say that I've already kind of committed to this opening. She does say that. That's not, you know, something that's already there. She would have given a different opening. Nobody knows that. Yeah, and what follows from that is different cross, different direct. We started talking about different investigation, looking at the house. We don't know what the house looked like and all those different things. But again, I mean, I think it's incumbent upon her to raise that and let the trial judge know that at that time and then let us know that on review. Agreed. And we don't really have a record of that, which is why I'm not meaning to speculate, but these are just things based on the trial testimony I could get into. But she did talk about the opening. She did specifically mention that a couple of times. Thank you very much. See you again. Thank you very much. On behalf of the people. I think what we're forgetting is I don't think you could have changed your trial strategy. We've forgotten that the defendant testified at trial that he said, no, I didn't make contact with the victim. That's what he told the police officers. He agreed. That's what he said. But then he went on to explain that, well, it was an accident. So that's why he said he didn't have any contact with her. He claimed that he tripped on a toy and that he didn't consider that contact because it was accidental. Well, that was his testimony. She had to live with that testimony. And I don't think that would have changed your trial strategy at all. In fact, it would have helped her strategy. The victim's recantation of her original story. So there's nothing here that from the state that was willful or flagrant. It's a misdemeanor case. It's not a felony. So really, there's no statute. It doesn't have to be willful or flagrant. It could be inadvertent for a Brady violation. I'm sorry. It doesn't have to be willful or flagrant. It could be inadvertent for a Brady violation. Correct. But also, it goes to the remedy. Let me ask you. Maybe that's the answer to your question. But the counsel argued this was a Brady violation. And in your brief, you don't even mention Brady. So are you forfeiting or conceiving that it was a Brady violation? I'm saying that the state should have probably told a little bit earlier. Also, there was an onus on the defense counsel who did not even interview the victim before trial. But the fact is, even under that circumstance, it was inadvertent. It didn't change anything. The proper remedy was to give her some time out in the hall to talk to the victim with the investigator. She didn't come in. Certainly, she must have felt comfortable after interviewing the victim that, yes, we can continue. Otherwise, why wouldn't she have said, I would like to continue this matter? All she asked for was, can I also put my investigator on the witness list? End of story. I don't think she felt it was going to impact her case. In fact, like one of you said previous, it helped her case. So I just don't see what other remedy you continue, but what's going to be done? Well, in any event, we ought to remember that, as I recall the facts of the United States Supreme Court's famous decision on Brady, the exculpatory evidence was surfaced after the defendant was convicted and sentenced to the penitentiary. Here, the evidence was, in fact, presented in the defense case, right? Correct. But, I mean, you can see that the evidence was exculpatory and it wasn't turned over, inadvertently or not. But you're arguing something about a sanction. And, again, it's not a Brady violation. It's not reversible unless the outcome of the case would have been different. I mean, that's the extension of once we do the Brady analysis. But since there's no Brady analysis in your brief, I'm just curious as to where we're going with this on the Brady front. Well, I think Justice Hudson just spoke to it. The fact that there was a misdemeanor that, I guess I was going on an attitude that this was, it wasn't a Brady violation because, number one, she was able to use the evidence. Two, she was given time to take the evidence. Three, in her, you know, she heard the assistant's opening statement. She did nothing to change her statement, which I think goes back to the fact that she knew that her defendant was going to testify. Well, yeah, I said no contact to police because it was an accident and I stepped on a toy and fell against her. So, ethically, I don't know where she would go otherwise or what else she would do in this case. In any event, the defense counsel never asked the police to reopen the opening statement, right, after finding this out? No, she did not. But, just, you know, point of interest, the first case cited by the defense is Brady v. Merrill. And no place do we see it here. I guess I took care of it at the sanction level, Your Honor. Okay. I think that's how strong I felt about it. Thank you. So, Heidi, can you vote? Very good. Counsel argues to you that the defense attorney did nothing to change her opening statement. And I think that's what's at the heart of this, which is making these changes midstream, making these changes last minute, making these changes in the middle of trial, deciding whether or not to have your client testify are decisions that I think are worthy of more than just sort of a 30-second analysis. They're decisions that are made with consultation, usually outside of the trial, which is, in essence, a pressure cooker. And trying to change your opening at the last second is the absolute worst possible time to try to change your opening. So I would just point out that I think Mr. Berrios deserved to have the ability at least a day or two days or however many days ahead of time. You know, unfortunately, when it comes to not necessarily prejudice, but there's nothing in the record that says that delaying this one day or half a day or two days would have prejudiced the State in any manner. So I would ask that you find a favor, Mr. Berrios. All right. Thank you, Mr. Medley. Thank you. All right. I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement, and a written decision will be issued in due course.